STATE OF NORTH CAROLINA                    IN THE GENERAL COURT OF JUSTICE
                                           SUPERIOR COURT DIVISION
COUNTY OF GUILFORD                         FILE NO. 18 CVS 4414

DURMON JONES, Jr.,                )
                                  )
       Plaintiff,                 )
                                  )
v.                                )        COMPLAINT
                                  )        (Jury Trial Requested)
CARRIAGE FUNERAL HOLDINGS,        )
INC. d/b/a CUMBY FAMILY           )
FUNERAL SERVICE, CUMBY            )
MUTUAL BURIAL ASSOCIATION,        )
INCORPORATED d/b/a CUMBY          )
FAMILY FUNERAL SERVICE,           )
                                  )
       Defendants.                )
                                  )
                                  )
                                  )

---

Plaintiff complaining of the Defendants alleges the following:

## PARTIES

1. Plaintiff Durmon Jones, Jr. ("Mr. Jones") is a citizen and resident of Indianapolis, Indiana.

2. Upon information and belief, Carriage Funeral Holdings, Inc. d/b/a Cumby Family Funeral Service, ("Cumby Funeral") is, and at all times relevant to the events set forth herein, a Delaware corporation existing and operating under the laws of the State of North Carolina with the principal place of business in Houston, Texas but doing business as Cumby Family Funeral Service in High Point, Guilford County, North Carolina.

3. Upon information and belief, Cumby Mutual Burial Association, Incorporated is, and at all times relevant to the events set forth herein, a North Carolina Non-profit corporation existing and operating under the laws of the State of North Carolina with the principal place of business in High Point, Guilford County, North Carolina and doing business as Cumby Family Funeral Service.

## VENUE AND JURISDICTION

4. Jurisdiction is proper in this Court pursuant to NCGS § 1-75.4.

*Complaint: Jones v. Carriage Funeral Holdings, et al., Page 1 of 8*

5. Venue in the Superior Court of Guilford County is proper pursuant to NCGS § 1-82.

6. This Court has subject matter jurisdiction under, inter alia, NCGS §§ 7A-240 and 7A-243.

## FACUTAL SUMMARY

7. This action arises from the mishandling and desecration of the corpse/body of Patricia Hill, the daughter of Mr. Jones. The allegations in this complaint will describe how the defendants accepted the body of Ms. Hill from her home and willfully and negligently failed to properly store or refrigerate her body for over four days, instead, relying on room air conditioning to cool her body. As a result, the body of Ms. Hill was handled in contravention of the standard of care resulting in the irreparable desecration of Mr. Jones' daughter's body to the extent that it was in such a severe state of decomposition when Mr. Jones viewed it that the body had to be cremated because it was in no condition for embalming and viewing. As asserted below, such conduct gives rise to claims by plaintiff against defendants for the negligent mishandling of his daughter's body, negligent and intentional infliction of emotional distress and punitive damages.

## FACTUAL BACKGROUND

8. Patricia Hill is the daughter of Durmon Jones, Jr.

9. Patricia Hill was found unresponsive in her home on Friday, April 10, 2015 and was not able to be resuscitated by emergency crews called to the scene.

10. Durmon Jones was in Indiana at the time of his daughter's death and was informed of her death by telephone. He arrived in North Carolina on April 11, 2015.

11. Family members at Patricia Hill's home selected defendants' funeral home to retrieve and hold the body of Ms. Hill as the family decided on funeral arrangements.

12. Andrew Cumby ("Cumby")is a funeral director (NC License # FS 2426 ) and officer of Carriage Funeral Holdings, Inc, with the title of "President of Cumby Funeral Services". Upon information and belief, Cumby also is an officer of Cumby Mutual Burial Association, Incorporated, which also does business as Cumby Family Funeral Services.

13. All actions of Cumby detailed herein were undertaken as an employee, officer, or agent of Defendants and are attributable to them through the doctrine of *respondeat superior.*

14. Andrew Cumby came to the home of Patricia Hill on April 10, 2015 to retrieve her body.

15. At the time of her death, Ms. Hill was five feet six inches tall and weighed approximately 280 pounds. She was born on February 8, 1965 and was fifty years old at the time of her unexpected death.

*Complaint: Jones v. Carriage Funeral Holdings, et al., Page 2 of 8*

Case 1:18-cv-00420-CCE-JLW   Document 2   Filed 05/16/18   Page 2 of 12

16. Andrew Cumby was instructed by family members at the scene that Ms. Hill's body was to be preserved for a potential autopsy. Mr. Cumby was told to refrigerate the body and not embalm the body.

17. In a letter dated June 17, 2015 written by Andrew Cumby to the North Carolina Board of Funeral Services and attached to this Complaint as Exhibit 1 and incorporated herein as if fully set out, Andrew Cumby describes his interaction with the family of Ms. Hill on April 10 as follows:

> I took Ms. Hill to Cumby Family Funeral Service-High Point with the intention of refrigerating her body, as the family had instructed me not to embalm her. However, after arriving at the funeral home, I discovered that the refrigerator could not accommodate Ms. Hill's size.
>
> I understood from conversation with family members that Ms. Hill's family was considering an autopsy and that they would quickly make a final decision regarding the autopsy. Accordingly, I believed that Ms. Hill would remain in the funeral home's possession for only a short period of time.

18. Mr. Jones contacted the defendants on April 11 when he arrived in North Carolina to say that the family was trying to speak with the medical examiner to decide if an autopsy was needed. Mr. Jones confirmed with defendants that his daughter's body was being refrigerated and properly stored.

19. Cumby spoke with at least one family member each day from April 10 through April 14, 2015.

20. During this same period of time, neither Cumby nor Cumby Funeral informed Mr. Jones or any family member that Cumby had determined that "the refrigerator could not accommodate Ms. Hill's size."

21. During this same period of time, neither Cumby nor Cumby Funeral advised Mr. Jones or any family member that they should select a different funeral home with refrigerated body storage.

22. During this same period of time, Cumby attempted to preserve Ms. Hills body (and in his own words) "by increasing the air-conditioning within the care center to extremely cool temperatures, particularly during the evening and overnight each day." (Exhibit 1)

23. Cumby admits that he "likely could have forced Ms. Hill's body into the refrigerator" but that he choose not to "out of respect for her and due to [his] belief that Ms. Hill would remain in our care for only a short period of time." (Exhibit 1)

24. Cumby further admits that during the daily conversations with Ms. Hill's family that he never told them the body was left out of the refrigerator: "...I realize that I could have been more direct with Ms. Hill's family with respect to the method of preservation that I

*Complaint: Jones v. Carriage Funeral Holdings, et al., Page 3 of 8*

used." (Exhibit 1)

25. On April 14, Mr. Jones viewed the body of his daughter and was shocked at what he saw: Her body was two to three times its normal size. Her jewelry was buried in her flesh because of the decomposition and swelling. Skin tears over her body and her lips looked like they were the result of her skin being inflated with blood running over her face. Her head was in a downward manner where the blood flowed causing her face to be several shades darker than her body. The only thing Mr. Jones could recognized was her braided hair.

26. As a result of the substantial decomposition of Patricia Hill's body, Mr. Jones and his family were advised by another funeral home that the body could not be displayed in an open casket due to the swelling and smell and that the only choice was cremation. As a result, the body of Patricia Hill was handled in contravention of the standard of care resulting in the irreparable desecration of Mr. Jones' daughter's body to the extent that it was in a state of decomposition. Such conduct gives rise to claims by Mr. Jones against defendants for the negligent mishandling of his daughter's body, negligent and intentional infliction of emotional distress and punitive damages.

27. Patricia Hill's body was cremated.

### A. Defendants' Services

28. All Defendants do business as "Cumby Family Funeral Services" with funeral service locations in High Point and Archdale. Cumby Family Funeral Services holds itself out as providing, among services, burial services. Cumby Family Funeral Services markets its services with the slogan "The difference is service".

29. Defendants offer burial services which they describe as "Burial Services- Burying a loved one is always an emotional experience. The nature of the service itself can be modified in accordance with the deceased's wishes, or with the general preferences of the family. We do not take a one-size-fits-all approach to our burial services, but rather we create the kind of mood that families request—while ensuring that, regardless of the particulars, each burial service is intimate, affirming, and beautiful.

30. Andrew Cumby is the managing director of Defendants and received his Funeral Service Degree in 2000, from Fayetteville Technical Community College. He is a licensed funeral director, embalmer, and crematory operator and is familiar with the practices and standards of care for preservation of a human body.

31. Upon information and belief, defendants and their agents were, or should have been, aware of practices for handling of a deceased's body upon death and the importance of strict adherence to the practice of body preservation requiring strict adherence to the practice of placing the body in a refrigerated area to prevent the body from decomposing.

32. Upon information and belief, Defendants were, or should have been aware, that failure to follow such practice would result in decomposition and desecration of the body of the

deceased and emotional trauma to the family members of the deceased who viewed the body.

### B. Desires of the father and family of Patricia Hill

33. The Jones/Hill family has a tradition of open casket ceremonies. They refer to them as "going away ceremonies" where the family is allowed to see, touch, lay hands upon, talk to, and kiss the deceased family member.

34. The Jones/Hill open casket ceremony brings final closure to the hearts, spirits and and minds of all family members.

35. Due to the actions of defendants, the Jones/Hill family and the Plaintiff were deprived of the "going away ceremony" open casket.

### The Harm Suffered by Plaintiff

36. As a direct result of the desecration and mistreatment of Patricia Hill's body, Mr. Jones has suffered deep emotional pain and suffering and mental anguish.

37. As a direct result of the desecration of Patricia Hill's body, Mr. Jones has also suffered, and continues to suffer severe and disabling emotional distress. As a direct result of this emotional stress, Mr. Jones suffers from nightmares and emotional upset which has required the care and counseling of medical and psychological professionals.

### First Claim for Relief:
### Negligent and Grossly Negligent Handling of a Corpse

38. The allegations above are incorporated into this cause of action as if fully stated herein.

39. Mr. Jones was the designated representative of the family or next of kin of Patricia Hill and as such had the right to direct the handling of his daughter's body upon her death.

40. Defendants knew or should have known that Mr. Jones was Patricia Hill's designated representative or next of kin.

41. Defendants also had a legal duty to handle the body of Patricia Hill in a manner consistent with the wishes and desires of the Mr. Jones and his family.

42. Defendants knew or should have known that Mr. Jones and family desired to have Patricia Hill's body prepared for burial services which would include an open casket. As such, defendants knew or should have known that Patricia Hill's body needed to be handled in such a manner as to preserve the body in such a state as to allow proper preparation for burial.

43. Defendants also had a legal duty of care which required them to handle the body of

*Complaint: Jones v. Carriage Funeral Holdings, et al., Page 5 of 8*

Case 1:18-cv-00420-CCE-JLW   Document 2   Filed 05/16/18   Page 5 of 12

Patricia Hill in a manner consistent with the standard of care established to preserve the body of a deceased person which provided, but not was not limited to, keeping the body in a refrigerated temperature controlled environment that would not allow decomposition of the body.

44. Defendants knew, or should have known, that the arrangements for a potential private autopsy would take longer than 24 hours, considering the death was on a Friday and the family was in constant contact with the Defendants.

45. Defendants breached their legal duties of care by:
    a. failing to properly place the body in a refrigerated environment to preserve it;

    b. allowing the body to be placed in high temperature environment that led to decomposition and desecration of the body;

    c. failing to properly monitor the body while in an environment likely to cause decomposition;

    d. failing to inform Plaintiff that the body would not be able to be refrigerated so that Plaintiff could have the opportunity to make other arrangements;

    e. failing to recognize at the home of Patricia Hill that the body might not fit inside the refrigerator at the facility (which Plaintiff denies to be true) and inform the family of this issue so they could be afforded the option to seek another funeral home service; and,

    f. other breaches of duty as to be determined through discovery and trial.

46. Such conduct on the part of defendants constitutes negligence.

47. Further, the breach of the legal duties of defendants above, particularly that defendants reassured Plaintiff or Plaintiff's family each day that his daughter's body was being refrigerated, amounted to willful and wanton disregard for the rights of Plaintiff.

48. As a result of the negligence and gross negligence of defendants, Plaintiff suffered emotional and mental damage and harm, is exposed to increased risks of future harm, and faces the anxieties associated with the possibility of future harms.

49. As a proximate result of the negligent and grossly negligent actions and inactions by the aforesaid defendants, Plaintiff was harmed, and is entitled to actual and punitive damages in an amount in excess of $25,000.00 to be established by the finder of fact.

## Second Claim for Relief:
## Negligent Infliction of Emotional Distress

50. The allegations above are incorporated into this cause of action as if fully stated herein.

*Complaint: Jones v. Carriage Funeral Holdings, et al., Page 6 of 8*

Case 1:18-cv-00420-CCE-JLW   Document 2   Filed 05/16/18   Page 6 of 12

51. Defendants had a duty to exercise reasonable care to protect the Plaintiff from emotional harm and emotional distress.

52. Defendants breached their duty to Plaintiff by negligently handling the body of Ms. Hill and by misrepresenting through omission the mishandling of the body of Patricia Hill and by depriving Plaintiff the opportunity to bury his daughter in the manner and custom of his family. Defendants' conduct was careless and reckless and showed a complete disregard for the rights of Plaintiff and others. It was reasonably foreseeable to these Defendants that their conduct would cause injury to Plaintiff, including extreme emotional distress.

53. The conduct of defendants was recklessly indifferent to the likelihood that it would cause severe emotional distress to Plaintiff.

54. The conduct of defendants did in fact cause severe emotional distress to Plaintiff, causing him to develop a severe and disabling emotional and mental condition which has been recognized and diagnosed by professionals trained to do so.

55. As a direct and proximate result of the negligent infliction of emotional distress by the aforesaid Defendants, Plaintiff was harmed, and is entitled to actual and punitive damages in an amount in excess of $25,000.00 to be established by the finder of fact.

### Third Claim for Relief:
### Punitive Damages

56. The allegations above are incorporated into this cause of action as if fully stated herein.

57. Pursuant to Chapter 1D of the North Carolina General Statutes, the conduct of all Defendants as described herein was willful, wanton, oppressive, reckless, and in callous disregard for the rights and safety of Plaintiff. As a result of this conduct, the Defendants are each liable to the Plaintiff for punitive damages.

58. There is a need to punish the Defendants for their egregiously wrongful acts described above and to deter them and others from committing similar wrongful acts. Plaintiff is therefore entitled to recover such punitive damages as may be awarded which bear a rational relationship to the sum reasonably needed to punish Defendants or to deter them and others from committing similar wrongful acts in the future.

59. As a result of actions of the Defendants which were in willful, wanton, oppressive, reckless, and in callous disregard for the rights and safety of others, particularly Plaintiff, the Defendants are liable to Plaintiff for punitive damages in an amount in excess of $25,000.00 to be established by the finder of fact.

### Prayer for Relief

*Complaint: Jones v. Carriage Funeral Holdings, et al., Page 7 of 8*

Case 1:18-cv-00420-CCE-JLW   Document 2   Filed 05/16/18   Page 7 of 12

WHEREFORE, Plaintiff prays the Court for the following relief:

1. That this matter be tried by a jury;

2. That Plaintiff be awarded judgment against Defendants, jointly and severally, and against their successors and assigns, in an amount in excess of $25,000.00 for each and every of the various causes of action set forth above;

3. That Plaintiff be awarded punitive damages against each Defendant in an amount in excess of $25,000.00;

4. That the costs of this action be taxed against Defendants;

5. That Plaintiff be awarded interest as provided by law; and

6. For such other and further relief as the Court and jury shall deem just and proper.

This the 10th day of April, 2018.

NICHOLS LAW FIRM
*Counsel for Plaintiff*

BY: *[signature]*
CHRISTOPHER R. NICHOLS
N.C. State Bar No. 21224
1312 Annapolis Drive, Suite 103
Raleigh, NC 27608
Tel:  (919) 915-0212
Fax:  (866) 845-1338
Chris@NicholsTrialLaw.com

*Complaint: Jones v. Carriage Funeral Holdings, et al., Page 8 of 8*



**Cumby**
FAMILY FUNERAL SERVICE

RECEIVED
JUN 1 8 2015
via FedEx

June 17, 2015

Dara Lyon Warner
North Carolina Board of Funeral Service
1033 Wade Avenue, Suite 108
Raleigh, NC 27605-1158

Re: #C15-046

Dear Ms. Warner:

    I am the funeral director who handled the situation addressed in Durmon J. Jones, Jr.'s complaint and have personal knowledge of the incidents referred to in it. Please accept this letter as my and Cumby Family Funeral Service's response to the complaint, and please direct all further communications to my attention.

    By way of introduction, Cumby Family Funeral Service, Carriage and I are committed to being the most professional and highest quality funeral services organization in our industry and community. My family has been professionally serving the High Point and Archdale areas for many years, opening Cumby Family Funeral Service at High Point in 1948 and in Archdale in 1975. The concepts, philosophies and practices in serving our families have always been ethical, informative, professional, compassionate, caring and fair. Customer service and satisfaction are important to us and we take Mr. Jones' complaint of the handling of Patricia Hill very seriously.

    By way of explanation, when I arrived at the home of Patricia Hill on April 10, 2015 to receive her into my care, there was a violent disturbance in progress. A reporter was assaulted, the police had been called, and at least one person was taken away in handcuffs. People were yelling obscenities at the police officers. The general situation traumatized and frightened me and my assistant.

    I took Ms. Hill to Cumby Family Funeral Service-High Point with the intention of refrigerating her body, as the family had instructed me not to embalm her. However, after arriving at the funeral home, I discovered that the refrigerator could not accommodate Ms. Hill's size.

    I understood from conversation with family members that Ms. Hill's family was considering an autopsy and that they would quickly make a final decision regarding the autopsy. Accordingly, I believed that Ms. Hill would remain in the funeral home's possession for only a short period of time.

1015 Eastchester Drive • P.O. Box 509 • High Point, North Carolina 27261-0509 • 336-889-5045
206 Trindale Road • Archdale, North Carolina 27263 • 336-431-9124



PLAINTIFF'S EXHIBIT
1
(3 pages)

I likely could have forced Ms. Hill's body in to the refrigerator; however, I chose not to do so out of respect for her. Instead, and particularly due to my belief that Ms. Hill would remain in our care for only a short period of time, I attempted to preserve Ms. Hill's body by increasing the air-conditioning within the care center to extremely cool temperatures, particularly during the evening and overnight each day. This method seemed to me to be working, as her appearance remained acceptable for the first few days and did not deteriorate to any significant degree until the final day.

I spoke with at least one family member daily to request that they make a decision as soon as possible. The family eventually declined to request an autopsy and for reasons unknown to me chose to transport Ms. Hill to Phillips Funeral Home on April 14, 2015. Unfortunately, by this time, Ms. Hill's body had begun to decompose.

In hindsight, I realize that I could have been more direct with Ms. Hill's family with respect to the method of preservation that I used. Accordingly, I sincerely regret any confusion or disappointment that may have resulted from my conversations with Ms. Hill's family members. Further, I also regret the ultimate condition of Ms. Hill's remains. However, I respectfully note that, as you are aware, embalming, refrigeration, or any other method of preservation only slows the decomposition of human remains; and, the appearance of the deceased can be a result of many additional factors including the cause of, and conditions at, the time of death, medications taken at time of death and physical condition.

In recognition of the situation, I instructed our staff to refund the $375 transfer fee that the family paid. I also personally called Mr. Jones multiple times to apologize to the family and to see if there was anything I could do to assist the family.

I am hopeful that this information adequately responds to Mr. Jones' complaint; and, I respectfully request that you close this matter, as I believe I have addressed the situation to the best of my ability. Should you have any questions, please feel free to call me.

Respectfully submitted,

Andrew Cumby



# NORTH CAROLINA
# BOARD OF FUNERAL SERVICE

July 7, 2015

Mr. Durmon J. Jones, Jr.
4550 Brown Rd.
Indianapolis, IN 46226-3150

Re: #C15-046

Dear Mr. Jones:

Enclosed is a copy of the response we received from Cumby Family Funeral Service of High Point, North Carolina.

If you have any additional information that you want the Disciplinary Committee to consider, please send it within 15 days to the attention of Stephen Dirksen, General Counsel, at the Board's address shown below.

Regards,

Dara Lyon Warner, MBA, MA, NCCP
North Carolina State Bar Certified Paralegal

Enclosure

Office: 919-733-9380 • Fax: 919-733-8271 • 1-800-862-0636 • www.ncbfs.org
1033 Wade Ave. Suite 108 • Raleigh, NC 27605 1159

## CERTIFICATE OF SERVICE

I, Joseph T. Carruthers, hereby certify that on the 16th day of May, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Christopher R. Nichols, Esq.
Nichols Law Firm
1312 Annapolis Drive
Suite 103
Raleigh, NC  27608
Chris@NicholsTrialLaw.com

/s/ Joseph T. Carruthers
JOSEPH T. CARRUTHERS
NC Bar No.: 7649
**WALL BABCOCK LLP**
1076 West Fourth Street
Winston-Salem, NC  27101
jcarruthers@wallbabcock.com
Telephone No.:  (336) 722-6300
Telecopy No.:  (336) 722-1993